THE SELMA, ROME & DALTON RAILROAD. COMPANY *vs.* GAMMAGE.

[BLECKLEY, Justice, was providentially prevented from presiding in the following case.]

1. Though the mode of taking an appeal from the verdict of the jury of the vicinage to assess damage against the Selma, Rome & Dalton Railroad Company be prescribed by its charter, yet the general law in respect to amendments of appeal bonds will be applied to such appeals.

2. Objections to an appeal on the ground that twenty day's notice thereof was not given pursuant to the charter, will not be considered unless made as soon as the party had opportunity to do so, and where the case was pending in court from 1869 to 1879, and once tried in 1874, and the record does not affirmatively show that the objection in regard to notice was made until 1879, the appeal will not be dismissed on this ground.

3. If the appeal papers be deposited in the clerk's office within the thirty days limited by the charter within which an appeal may be taken, the appellant should not be prejudiced by the failure of the clerk to mark them "filed in office," especially if the objection be not taken at the first opportunity.

4. Where damages are ascertained by the jury on the appeal to be greater than the sum assessed by the jury of the vicinage, and the necessity of the appeal to recover the rights of the appellant is thereby established, interest may be added as part of the damages.

5. Whilst the evidence of the value of the land taken by the company and of the damage to appellant's farm is conflicting, yet there is enough to support the verdict, and the presiding judge having approved it, this court will not interfere.

Appeals. Laws. Practice in the Superior Court. Amendment. Damages. Interest. Verdict. Before Judge UNDERWOOD. Floyd Superior Court. March Term, 1879.

The charter of the Selma, Rome & Dalton Railroad (acts Ala., 1851, pp. 348–351) contained the following provision on the subject of appeals from the decision of the jury provided thereby to assess damages done to land by the road :

*Provided, however*, That if either party should be dissatisfied with the finding of the jury the dissatisfied party may appeal to the next term of the said circuit court after the finding, if as much as thirty days shall intervene between the finding of the jury and the holding of said court. If not, then the term next after, where the case shall be tried *de novo*, by the court and jury, provided the appealing party shall give the opposite party as much as twenty days notice of the appeal, and shall also before the clerk of said court enter into bond and security, to be approved by him, payable to the party appealed against, in the sum double the amount of what the clerk may estimate the probable cost, conditioned to pay to the party appealed against, all the cost of the trial *de novo*, as well as the costs of the writ of *ad quod damnum*, in the event that the finding of the jury in the trial *de novo*, shall not be more favorable to the appealing party than the finding of the jury under the writ of *ad quod damnum* in the first instance.

In 1869 a jury was summoned to try the question of damage to the land of Gammage. They found $384.00, and he appealed. The present trial was had in 1879. The jury found for the plaintiff $1,250.00. Defendant moved for a new trial on the following, among other grounds :

(1.) Because the court refused to dismiss the appeal on motion. The motion to dismiss was because the appeal was not properly entered, in that the bond and notice required by the charter were not given.

(2.) Because the court allowed the bond to be amended. As originally made it was as follows :

"And now comes the plaintiff, by his attorneys at law, Alexander & Wright, *being dissatisfied with said verdict*, and brings W. Yarbrough and tenders him as security, and the said plaintiff and the said security acknowledge themselves jointly and severally bound unto the said

Selma, Rome & Dalton Railroad Co., in (*the eventual condemnation money in the above cause in the event the plaintiff be cast in his said suit*). Given under our hands and seals this 4th day of September, 1869.

"DAVIS GAMMAGE." (Seal.)

"By his attorneys, Alexander & Wright.'

"N. YARBROUGH, (Sec'y.) (Seal )

"W. H. Jones."

This bond was first amended, during the January term, 1874, by plaintiff's attorneys, at which time a trial was had in the case. Exception was made to the bond, and the court allowed it amended by striking the words in parenthesis and inserting the following:

"*The sum of two hundred dollars, subject to the condition that if the plaintiff shall pay the costs that may be recovered against him, in the event the verdict of the jury on the appeal trial shall not be more favorable to him than the verdict on the first trial, then this bond to be void.*"

After this amendment was made, the name of W. H. Jones was signed to the bond, but no seal was attached to his name, nor was said bond again signed by either plaintiff or security. The jury in the first trial found against said defendant, and a new trial was granted.

On the second trial in 1879 all the exceptions were renewed, and again (plaintiff objecting) the bond was amended by striking out all the words in brackets above, and by inserting the following words:

"The sum of two hundred dollars, subject to the condition that if the plaintiff shall pay the costs of the writ *ad quod damnum* ; also pay the costs that may be recovered against him on this appeal in the event the verdict of the jury on the appeal trial shall not be more favorable to him than the verdict on the first trial, then this bond to be void."

The name of Wm. H. Jones did not first appear in the body of said bond, and after said amendment was allowed, the same was not re-signed by either of the parties whose names appear to the original bond before amendment, nor by their authority, and the signature of Wm. H. Jones appears without "seal" thereto.

(3.) Because the court charged the jury that they were authorized to add interest on the amount of damages they

should find from the time said land was taken up to the present time; provided their finding should be in excess of the damages first assessed on the writ of *ad quod damnum,* from which assessment of damages Gammage appealed.

(4.) Because the verdict was contrary to law, evidence and the charge of the court.

The motion was overruled, and defendant excepted.

DANIEL S. PRINTUP, for plaintiff in error.

ALEXANDER & WRIGHT; WRIGHT & FEATHERSTON, for defendant.

JACKSON, Justice.

1. The charter granted by Alabama to this company, it is agreed, was adopted and ratified by Georgia; and therefore appeals from a verdict of a jury on a writ called therein *"ad quod damnum"* will be regulated by the rules prescribed in the charter. The bond first given by the appellant did not correspond in condition and penalty with that required by the charter, but the court, in accordance with the provisions of our Code in regard to amendment of appeal bonds generally and the long established practice in our courts, approved repeatedly by this court, allowed the bond to be amended, and it was amended when first objected to in 1874. Code, §§3505, 3506; 1 Kelly, 176; 18 *Ga.,* 372, 472, 607; 30 *Ga.,* 329; charter Selma, Rome & Dalton Railroad Company, 348-49-51; acts of Alabama, 1851.

This general law in regard to amendments pervades our entire system of jurisprudence, and will be applied to all appeal papers where the party in good faith enters an appeal though irregularly, and no harm has resulted to the other party. 1 Kelly, 275; 9 *Ga.,* 405, 205; 11 *Ga.,* 39; 18 *Ga.,* 607; 30 *Ga.,* 43; 31 *Ga.,* 357; 38 *Ga.,* 322.

2. The charter prescribes that twenty days notice shall be given to the other side by the appellant, and it is objected that this has not been done. The objection proba-

bly is vital and would be fatal perhaps had it been made on the first opportunity the defendant had to make it ; but the record shows that it was made on the trial in 1879 and not before, not even on the trial in 1874. Objection was then made in respect to the appeal bond, but not on the ground of want of notice so far as this record shows ; and the plaintiff in error must bring a record here which shows error. With or without notice the respondent appears to have litigated the case for ten years, and it is too late in the tenth year of the litigation to say that it had no notice. The object of the notice is to bring the respondent in and give him a hearing. This has been accomplished. True, it might have stood on the terms of its charter, had it moved in time, but it failed to do so and has lost its opportunity by *laches*.

3. When the papers got into the clerk's office on the 4th of September, 1869, which is the date of the bond, it was his duty to file them, as well as the finding of the "*ad quod damnum*" jury as the appeal, and the failure of the clerk to file them ought not to work prejudice to the appellant any more than his failure to file or record the original finding should prejudice the respondent. But this objection, like that in respect to the notice, comes too late after the first trial, and the record does not show that it was made then. Of course either might have been renewed, but originally they should have been made at the earliest practicable stage of the litigation. 1 Kelly, 275 ; 38 *Ga.*, 222.

4. The Code allows interest to be added to the ascertained value of property taken or destroyed, and the court and jury were right to allow it here, if the appeal was justifiable. The appeal was justifiable if the verdict of the jury of the vicinage on the writ of *ad quod damnum* was ascertained to be too small. The appeal jury found that it was too small, and had the right therefore to add the interest and increase the damages found to that extent. Code, §2945 ; 17 *Ga.*, 39.

Indeed, this case illustrates the propriety of the law on

The Selma, Rome & Dalton Railroad Co. vs. Gammage.

this subject.   The appellant was entitled to the payment for his land and the damage in 1869, and has been out of land and money both ever since.   To whatever, therefore, was the true amount he had been injured, interest ought to be added unless his appeal was unfounded, and unless $380.00 found by the first jury was just remuneration.   If so he ought to have taken that sum, and ought not to have appealed.   But this jury have found that he ought not to have taken that sum—that it was not just remuneration—and that therefore he ought to have appealed.   Hence interest ought to be allowed.

The truth is, that the right of one whose land has been seized by the public, or by another for *quasi* public use, to just compensation, is a constitutional right laid down in our fundamental law, and is built upon one of the three inherent, absolute rights of all men in civilized society—the rights of personal liberty, personal security, private property —courts should therefore protect and guard such rights against infraction by affording full compensation.   Cons. U. S.; Code, §5224; Cons. *Ga.*, Sup. to Code, §§473, 474, 503; 1 Blackstone's Com., 129.

5. The evidence as to the proper amount of damage— the value of the land vested in fee simple in the company and the damage to the farm—is conflicting; the presiding judge who granted a new trial once because the verdict then was too large, approves the less amount found now; his presentation of the law of the case to the jury was clear, full and liberal toward the plaintiff in error; there is evidence enough to sustain the verdict; and in such a case where the presiding judge approves what is found, this court does not interfere, especially will it be loth to do so where the complaints rest on immaterial technicalities.   15 *Ga.*, 111; 22 *Ib.*; 21; 28 *Ga.*, 73.

Judgment affirmed.